[Cite as *Spencer v. Cent. State Univ.*, 2012-Ohio-1245.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JOYCE SPENCER

    Plaintiff

    v.

CENTRAL STATE UNIVERSITY

    Defendant

Case No. 2010-03711

Judge Alan C. Travis

DECISION

{¶1} Plaintiff brought this action alleging that defendant terminated her employment on the basis of age in violation of R.C. 4112.14. The issues of liability and damages were bifurcated and the case proceed to trial on the issue of liability.

{¶2} Plaintiff was employed with defendant from 1978 to 1987, and again from 1998 to 2008. Plaintiff testified that during her first period of employment, she served as an intake clerk and then a financial aid counselor, but that she and 40 to 50 other employees were laid off in 1987 due to downsizing. Plaintiff explained that she returned to defendant's employ in 1998 as a buyer in the purchasing department, and that several months later she was hired into the newly-created position of Default Manager. According to plaintiff, defendant was at that time in danger of losing federal funding as a result of its former students having a high default rate on their student loans, and defendant addressed this by creating the Default Manager position to educate students about loans and to administer federal student loan paperwork and funds in accordance with Title IV of the Higher Education Act of 1965.

{¶3} As the Default Manager, plaintiff initially served within the office of

defendant's controller; however, near the end of her tenure, the position was moved to the office of financial aid.  Phyllis Jeffers-Coly testified that when she became defendant's Dean of Enrollment Services in April 2008, thereby assuming responsibility for the office of financial aid, among other departments, she found that the office was dysfunctional and she received poor feedback from students and parents about its services.  Jeffers-Coly stated that she and the Interim Director of Financial Aid, Jean Hurst, therefore undertook a study of how to improve the functionality of the office and make it more responsive to student needs.  According to Jeffers-Coly, some of the changes decided upon were assigning each student a financial aid counselor and creating a new position, known as the Access/Investment Educator, to provide students another resource to learn about various ways to finance their education.  She explained that an emerging trend in higher education is the concept of broadening the ability of college students, especially first-generation students, to access information about financial aid, scholarships, and other means of funding their education, and that this is the core function of the Access/Investment Educator position.

{¶4} The creation of the new position was one of several personnel changes that Jeffers-Coly decided upon as she restructured the financial aid office.  Others included the elimination of a Student Employment Coordinator position and the Default Manager position held by plaintiff.  Jeffers-Coly testified that the reasons for eliminating the Default Manager position included the need to free up funding for the Access/Investment Educator, the need to reduce operating expenses, the ability of other staff to assume certain duties performed by plaintiff, and changes in the financial aid industry that had made aspects of the job obsolete.  Jeffers-Coly explained that the Default Manager was primarily charged with minimizing the default rate on student loans, but that lenders had come to assume a greater role in this effort in recent years, taking a more proactive approach to prevent students from defaulting.

{¶5} Jeffers-Coly testified that before implementing the proposed reorganization

of the financial aid office, she hired Dr. Reginald Brazzle, a consultant specializing in higher education administration, to study the operation of the office and to review her proposals. Jeffers-Coly stated that Dr. Brazzle endorsed the creation of the Access/Investment Educator position, but she did not ask him to opine on the proposed elimination of the Default Manager position. After the completion of Dr. Brazzle's study, Jeffers-Coly proceeded with the reorganization plan, sending a memorandum to defendant's President, John Garland, on November 8, 2008, wherein she requested his approval to go forward with the plan, including the elimination of the Default Manager position and plaintiff's resultant termination. (Plaintiff's Exhibit 2.) Garland, who had ultimate authority on such matters, subsequently gave his approval.

{¶6} On December 3, 2008, plaintiff was summoned to a meeting with Jeffers-Coly, Hurst, and Director of Human Resources Kimberly Manigault. Plaintiff testified that at this meeting, she was handed a termination letter, was informed that her position was being eliminated because the financial aid office "was going in a different direction," and was asked to immediately gather her effects and leave campus. (Plaintiff's Exhibit 20.)

{¶7} On January 30, 2009, defendant posted the Access/Investment Educator position. (Plaintiff's Exhibit 10.) Jeffers-Coly and others subsequently conducted interviews and the position was ultimately awarded to Stephanie Krah, who was then approximately 27 years old and serving as a Residence Hall Coordinator for defendant. Krah began her duties as Access/Investment Educator in August 2009.

{¶8} Plaintiff, who was 51 years of age at the time of her termination, claims that defendant unlawfully replaced her with Krah on the basis of age.

{¶9} "R.C. 4112.14(A) prohibits age discrimination in employment, and sets forth a protected class as follows: 'No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements

of the job and laws pertaining to the relationship between employer and employee.'" *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶8.

{¶10} "Absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of R.C. 4112.14(A) in an employment discharge action, a plaintiff-employee must demonstrate that he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age."  Id. at paragraph one of the syllabus.  "If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for its discharge of the plaintiff.  Should the employer carry this burden, the plaintiff must then prove that the reasons the employer offered were not its true reasons, but merely a pretext for discrimination."  *Wigglesworth v. Mettler Toledo Intl., Inc.*, Franklin App. No. 09AP-411, 2010-Ohio-1019, ¶16. (Internal citations omitted.)

{¶11} It is undisputed that plaintiff was a member of a protected class based upon her age, that she was discharged from employment, and that she was qualified for the position she held.  However, the parties dispute whether plaintiff was replaced by Krah.

{¶12} "'[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.'"  *Woods v. Capital Univ.*, Franklin App. No. 09AP-166, 2009-Ohio-5672, ¶58, quoting *Barnes v. GenCorp, Inc.* (C.A.6, 1990), 896 F.2d 1457, 1465.  "An employer cannot avoid liability 'by changing the job title or by making minor changes to a job.'"  Id. at ¶60, quoting *Barnes*, supra, at 1465, fn. 10.   "Making cosmetic changes to a position before assigning it to another employee is tantamount to replacement."  Id. at ¶60.

{¶13} Plaintiff testified that the duties she performed as Default Manager included all of those listed on the Default Manager position description (Plaintiff's Exhibit 3), as well as serving as chairperson of the Satisfactory Academic Performance program and teaching a freshman seminar course. Concerning the duties listed on the Access/Investment Educator position description (Plaintiff's Exhibit 4), plaintiff stated that she performed several of these, including providing work study information to students, helping students complete the Free Application for Federal Student Aid, conducting seminars on financial aid at new student orientation and other occasions, teaching professionalism, and collaborating with other campus departments, which she did by having quarterly meetings with other departments specifically to address student loans. Plaintiff stated that she believes the basic nature of her position was similar to that of the Access/Investment Educator inasmuch as she was charged with delivering information to students, coordinating campus-wide efforts on loans, and working with first-generation students, who comprise a majority of defendant's students. She acknowledged, however, that the Access/Investment Educator position description includes several duties that she did not perform, including multiple duties that deal with scholarships.

{¶14} Jeffers-Coly testified that in comparison to the Default Manager position, the Access/Investment Educator is more focused on educational duties and less focused on the technical aspects of financial aid administration. Jeffers-Coly further testified that the educational duties of the Access/Investment Educator have a broader scope in that they entail more than loans and instead require comprehensive expertise in the financing of students' education, with scholarships being a central component, and she explained that the Default Manager's duties bore no connection to scholarships.

{¶15} Manigault testified that she reviewed Jeffers-Coly's reorganization plan before any personnel actions were taken, and that she found the Default Manager and

Access/Investment Educator positions to be different. Manigault related that if she believed the positions were essentially the same, she would have recommended that plaintiff be reclassified into the new position rather than be terminated; she added that only in the case of nearly identical positions does defendant allow reclassification.

{¶16} Krah, who served as the Access Investment Educator from August 2009 until her promotion to Interim Associate Dean of University College in June 2011, also testified that the most basic role of the Access/Investment Educator is to be an all-around resource for educating students on the means available to them for funding their education, including scholarships and other alternatives to loans. She testified that she performed little in the way of the Title IV administration and other technical financial work that plaintiff performed, and was instead much more focused on interacting with students. Krah stated that the job duties set forth in the Access/Investment Educator position description accurately reflect the work that she performed in that role, and that she also voluntarily took on duties such as applying for grants and promoting the financial aid office on the Internet.

{¶17} Upon review, the court finds that the evidence does not support plaintiff's assertion that Krah replaced her. The differences between the positions entail more than minor, cosmetic changes, and instead demonstrate that the duties of the Default Manager were primarily geared toward education and administration relative to financial aid, while the duties of the Access/Investment Educator primarily focus on comprehensive educational outreach covering various ways to fund education, especially scholarships. Krah only assumed a portion of plaintiff's former duties, and performed many others not performed by plaintiff. The testimony of Jeffers-Coly established both that some of plaintiff's former duties were reassigned to other employees and that other duties had become obsolete. As such, Krah undertook a new, different position rather than merely assuming plaintiff's former position. Accordingly, the court finds that defendant did not replace plaintiff, and that plaintiff thus

failed to demonstrate a prima facie case of age discrimination.

{¶18} Based on the foregoing, the court finds that plaintiff failed to prove her claim by a preponderance of the evidence. Accordingly, judgment shall be entered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JOYCE SPENCER

　　　Plaintiff

　　　v.

CENTRAL STATE UNIVERSITY

　　　Defendant

Case No. 2010-03711

Judge Alan C. Travis

## JUDGMENT ENTRY

{¶19} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
ALAN C. TRAVIS
Judge

cc:

Eric A. Walker                          Jason P. Matthews
Velda K. Hofacker                       Jeffrey M. Silverstein
Assistant Attorneys General             627 South Edwin C. Moses Blvd.
150 East Gay Street, 18th Floor         Suite 2-C
Columbus, Ohio 43215-3130               Dayton, Ohio 45417

001
Filed January 27, 2012
To S.C. reporter March 23, 2012